CahuiheRS, J.,
delivered the opinion of the Court.
David Lessenberry died in Kentucky, in 1818 or 1819, leaving Lorania, his widow, and the complainants, his children and heirs. Shortly thereafter the widow intermarried with one Benjamin Gassaway. At the May Term, 1820, of the County Court of Barren County, commissioners were appointed to lay off and allot to the said Lorania, her dower in the slaves of her deceased husband.
They allotted to her two of the slaves, one named Allen and the other Lucy, on the 21st of August, 1820, and the same went into the possession of the said Lorania and her second husband. After remaining with them a year or two, it is charged that the said Lucy was sold to a man named Galloway, and by him re *589 moved from the State, and sold to tbe defendant, Hopkins, “some twenty-five or thirty years ago.” One of the children of Lncy, named Keziah, was sold by Hopkins to one Leatherwood, the other defendant. Lorania and her husband both died in 1854, and this bill was filed in March, 1855.
The complainants claim the slaves upon the ground that, by the laws of Kentucky, their mother only had a life estate, and they a vested remainder.
The defendants assume two grounds of defence:
1. That the slave Lucy, owned by defendant, Hopkins, was not the same that was assigned to the said Lorania, as dower, in -her husband’s estate. This is a question of identity, which must he decided by the proof. Hopkins admits that he bought a girl by that name, in 1820, not from Galloway, but Isaac N. Bonds. He says she was then about fourteen years old, and had no children; but she died in 1853, leaving ten children, now in his possession, except the one sold to Leather-wood.
•John S. Barlow, an old citizen of Barren county, proves, that when ■■he was- a young man, he went with-Galloway, with some five negroes for sale, to Alabama, and that one • of them was named Lucy, then about fourteen or fifteen years old, as well as he can recollect; he thinks that was her name, and • he judges of her age from her appearance. This girl, he says, Galloway sold to a man by the name- of Bond- or Bonds, living some seven or eight miles from Huntsville, in Alabama. Hopkins says, in his answer, that he bought his girl, Lucy, from Isaac Bonds, • Madison county, Alabama, in the year 1820, to the best of his recollection.” ■ He' *590 says he took no bill of sale, and does not give the time of the year. Barlow says it was in February or March, 1820, as he thinks, but it may have been 1821. Neither Hopkins nor Barlow seem to be certain as to the year. Here is a striking coincidence as to the name of the slave, her age, and the name of the person to whom Galloway sold, and from whom Hopkins bought, and the residence of the purchaser. And this shows, also, that the girl Lucy, owned by Bonds, was brought from Kentucky by Galloway, and it does not appear that Bonds owned any other girl slave of that name; that is, there is no proof on that subject.
Samuel Everett proves that the girl, Lucy, was allotted as dower, and that a short time after, she was missing, and he has not seen her since, and was informed she was sold.
It is proved by James Dodd, that Joseph Galloway bought or had a girl upwards of twenty-five or thirty years ago, and took her off for sale, and that he never knew him to have but the one. He also states what Galloway told him about buying this girl from Gassaway, and the dispute between him and his brothers in relation to the title, and what he said about it; but that cannot be looked to, because it is hearsay, and was objected to.
The deposition of George Galloway puts the fact beyond dispute.
One witness for defendant proves that he, defendant, owned Lucy in 1818. This is evidently a mistake as to date, for the defendant, in his answer, does not pretend that ‘he bought her from Bonds earlier than 1820.
*591 There are some difficulties as to dates in the proof of Barlow, and other witnesses; but upon a full examination of all the evidence, there is not the least doubt left upon the mind as to the identification of the slave Lucy. This was not the difficulty with the Chancellor, as he expressly places his decree against complainants upon the statute of limitations.
2. The defendants’ solicitor contends that the right of action accrued to the complainants in 1820, when the slave was sold by the widow, or her second husband, and removed from the State. It is not controverted that the law of Kentucky, as adopted from her mother State, • Yirginia, is, that slaves are put upon the same footing as realty as to the widow’s dower. Act of 1797, 2 Dig. L. K., 1545. That is, she is entitled to one-third of the slaves, but for life only, with remainder to the heirs at law of the deceased husband. It is also conceded in the argument, that, unless sanctioned by the heirs, a removal of them from the Commonwealth is a forfeiture of the life estate. Secs. 25, 26. The defence on this point is, that, at the date of the sale by Gassaway to Galloway, and removal of the slave from the State by the latter, in 1820, a right of action accrued to the complainants, Cas remaindermen, nd, consequently, their right has been long since barred. That would, unquestionably, be so if there was nothing else in the case but that which is assumed in the proposition.
There is no question better settled than that the law of the State where a suit is brought, no matter where the cause of action may have originated, must *592 govern as to defences upon prescription or limitation of actions. Story on Con. Laws, §§ 576, 577.
Every nation or State must have the right to settle the time within -which suits must be brought or may be litigated in its own Courts. Ib., 578.
The time for the 'bar, then, in this case, is that which is fixed by the limitation acts of Tennessee. The suit was instituted in proper time after the death of the widow — less than three years. If the life estate had not been forfeited, there would be no question but that the statute would only begin to run from the termination of the life estate, at her death, for their right to sue then first accrued. But the defendant takes his stand here, and contends that the time of the forfeiture is the period at which the action accrued. The provision in the 26th section of the Kentucky act is, that “ in such case ” — that is, where the husband removes, or permits to be removed, out of the State such slaves— “ it shall be lawful for him or her in reversion to enter into, possess, and enjoy all the estate which such husband holdeth in right of his wife’s dower, for and during the life of said husband.” This applies, of course, to a case where a second husband removes, or causes to be removed, the dower slaves out of the State; and that is the case we have. If the remaindermen had asserted their right, then, and the mother had outlived her husband, she might have regained the slaves, and enjoyed them for the remainder of her life. But both are dead in this case, and that is not important. As to the effect of this statute in relation to the point in question, that is, when the right to sue accrued, we must look to the laws of Kentucky, as established by *593 the construction of their Courts upon their own statute, upon a principle of comity, well settled, as international law. This must furnish the rule for our Courts, in a case coming from Kentucky. Our acts of limitation must be applied, but as to the inception and character of the right, we are to look to the laws of that State. Upon this distinction the case must turn.
In Gales' heirs v. Miller, 3 Monroe, 418, it was decided by the Supreme Court of Kentucky, as early as 1826, that the forfeiture did not occur upon a sale by a second husband, in the State, nor in case of removal of the slave by the purchaser from the State, confining the act to the case of removal of the property by the husband or wife beyond the State. 1 Monroe & Harlan’s Dig., 518. So, according to that case, the complainants had no action until the death of their mother. There is some question made in the proof and argument as to whether Galloway purchased the negro from the husband, and took her to Alabama as his own, or acted only as agent. But if the latter be the character in which he acted, the case falls within the act, and a right to sue accrued to the reversioners at that time. But we find in further construction of their act in such a case as that, the Kentucky Courts have held, that though the tenant for life may forfeit his right, the remainderman is not bound to urge the forfeiture, and time will not commence to run to the prejudice of his right until the life estate terminates.” Same Dig., 520, § 27, citing King v. Minis, 7 Dana., 273; Tom Davis v. Tingle, 8 B. Monroe. These cases have not been furnished, but we suppose the principle to be correctly extracted in the Digest. Then, in neither aspect would *594 the forbearance affect the right of the complainants to recover in this suit.
We are brought then, irresistibly to the conclusion that the statute of limitation is not in the way of a recovery by complainants.
The decree will be reversed, and a decree here against the defendants for the slaves.